1

2

3

4

5

6

7

8               UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   GLENN DAVID O'NEAL,                          No. 2:14-cv-1597 KJN P

12              Plaintiff,

13       v.                                        ORDER AND FINDINGS &
                                                   RECOMMENDATIONS
14   CHAPLAIN AMAH, et al.,

15              Defendants.

16

17   I.  Introduction

18          Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant

19   to 42 U.S.C. § 1983.  Defendants' motion to dismiss is before the court.  As set forth below, the

20   undersigned recommends that defendants' motion to dismiss be granted in part and denied in part,

21   and that plaintiff be granted leave to amend to include a new claim.

22   II.  Motion to Dismiss

23          Pending before the court is defendants' motion to dismiss for failure to state a claim.  Fed.

24   R. Civ. P. 12(b)(6).  Plaintiff filed an opposition, and defendants filed a reply.

25       A.  Legal Standard

26          Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for

27   "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In

28   considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court

1

1    must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89

2    (2007), and construe the pleading in the light most favorable to the plaintiff.  Jenkins v.

3    McKeithen, 395 U.S. 411, 421 (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir.

4    1999).  Still, to survive dismissal for failure to state a claim, a pro se complaint must contain more

5    than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a

6    cause of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007).  In other words,

7    "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

8    statements do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Furthermore, a claim

9    upon which the court can grant relief must have facial plausibility.  Twombly, 550 U.S. at 570.

10   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

11   draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556

12   U.S. at 678.  Attachments to a complaint are considered to be part of the complaint for purposes

13   of a motion to dismiss for failure to state a claim.  Hal Roach Studios v. Richard Reiner & Co.,

14   896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

15        A motion to dismiss for failure to state a claim should not be granted unless it appears

16   beyond doubt that the plaintiff can prove no set of facts in support of his claims which would

17   entitle him to relief.  Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984).  In general, pro se

18   pleadings are held to a less stringent standard than those drafted by lawyers.  Haines v. Kerner,

19   404 U.S. 519, 520 (1972).  The court has an obligation to construe such pleadings liberally.  Bretz

20   v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc).  However, the court's liberal

21   interpretation of a pro se complaint may not supply essential elements of the claim that were not

22   pled.  Ivey v. Board of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

23        B.  Plaintiff's Complaint

24        Plaintiff alleges that based on his sincerely held religious beliefs he was provided a

25   religious diet card while housed at the California Correctional Institution ("CCI").  On August 15,

26   2012, he was transferred to High Desert State Prison ("HDSP"), and claims prison staff would not

27   honor the card because it was issued at CCI.  Plaintiff was informed that he would have to get a

28   card from the chaplain at HDSP.  Plaintiff claims that for more than two months he made several

1    requests for an interview with the chaplain at HDSP, but wasn't seen by Chaplain Howard until

2    October 23, 2012, and wasn't provided his religious diet until shortly thereafter.  Over that two

3    month period, plaintiff alleges this delay interfered with his religious diet practice, caused him to

4    lose fifty pounds, and rendered him weak and in hunger pain due to inadequate nutrition.

5    Plaintiff names as defendants Chaplain Amah and Chaplain Howard, and seeks monetary

6    damages.

7              C.  RLUIPA claim

8         The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") provides:

9              No government shall impose a substantial burden on the religious
              exercise of a person residing in or confined to an institution . . . ,
10             even if the burden results from a rule of general applicability,
              unless the government demonstrates that imposition of the burden
11             on that person --

12             (1) is in furtherance of a compelling government interest; and

13             (2) is the least restrictive means of furthering that compelling
              government interest.
14

15   42 U.S.C. § 2000cc-1.  RLUIPA "mandates a stricter standard of review for prison regulations

16   that burden the free exercise of religion than the reasonableness standard under Turner."  Shakur

17   v. Schriro, 514 F.3d 878, 888 (9th Cir. 2008) (citing Warsoldier v. Woodford, 418 F.3d 989, 994

18   (9th Cir. 2005)).  The Supreme Court has noted "RLUIPA . . . protects institutionalized persons

19   who are unable freely to attend to their religious needs and are therefore dependent on the

20   government's permission and accommodation for exercise of their religion."  Cutter v. Wilkinson,

21   544 U.S. 709, 721 (2005).  RLUIPA defines religious exercise to include "any exercise of

22   religion, whether or not compelled by, or central to, a system of religious belief."  42 U.S.C.

23   § 2000cc-5(7)(A); San Jose Christian College v. City of Morgan Hill, 360 F.3d 1024, 1034 (9th

24   Cir. 2004).  "'[F]or a land use regulation to impose a "substantial burden," it must be

25   "oppressive" to a "significantly great" extent.  That is, a "substantial burden" on "religious

26   exercise" must impose a significantly great restriction or onus upon such exercise.'"  Warsoldier,

27   418 F.3d at 995 (quoting San Jose Christian Coll. v. City of Morgan Hill, 360 F.3d 1024, 1034

28   (9th Cir. 2004)).

                                                3

1        However, RLUIPA does not allow for monetary damages against individuals, but rather

2    limits plaintiff to injunctive relief only.  Wood v. Yordy, 753 F.3d 899 (9th Cir. 2014).  Here,

3    plaintiff only seeks monetary damages.  Moreover, because plaintiff has now been transferred

4    from HDSP to a prison in Corcoran, any claims for injunctive relief against defendants at HDSP

5    are moot.  See Rhodes v. Robinson, 408 F.3d 559, 566 n.8 (9th Cir. 2005).  Thus, as stated in the

6    screening order, the court does not construe plaintiff's complaint as stating a cognizable claim

7    under RLUIPA.  (ECF No. 4 at 4.)

8        Despite such order, defendants move to dismiss plaintiff's RLUIPA claim,[1] and plaintiff

9    now argues, without citing legal authority, that RLUIPA does not bar liability for damages

10   against defendants in their individual capacities.  However, as plaintiff was previously informed,

11   the Ninth Circuit held definitively in Wood that a RLUIPA claim may not be maintained against

12   prison officials in their individual capacity, and therefore, a claim may only proceed under

13   RLUIPA for injunctive relief against defendants acting within their official capacity.  Id. at 904

14   ("there is nothing in the language or structure of RLUIPA to suggest that Congress contemplated

15   liability of government employees in an individual capacity.").  Thus, defendants' motion to

16   dismiss plaintiff's RLUIPA claim for damages should be granted.

17       D.  Free Exercise Clause Claim

18       Defendants argue that plaintiff fails to demonstrate that the two month delay in receiving

19   the diet constitutes a "substantial burden" on plaintiff's ability to practice his religion.  (ECF No.

20   15-1 at 4.)  Specifically, defendants contend that plaintiff was not required to eat the meat served

21   with his meals, and it would not violate his religion to eat the non-meat items served.  Defendants

22   argue plaintiff could have obtained non-meat items from the prison canteen or outside vendors,

23   and was free to pray, attend religious services, participate in religious holidays, consult religious

24   leaders, and otherwise practice all aspects of his religion.

25

26   [1] Defendants also move to dismiss plaintiff's Eighth Amendment claim, "if" plaintiff is asserting
     such a claim.  (ECF No. 15-1 at 6.)  The court did not identify an Eighth Amendment claim in the
27   July 18, 2014 screening order, and does not find that plaintiff asserted such a claim.  Also,
     plaintiff did not address defendants' argument in his opposition.  Thus, the court declines to
28   address defendants' conditional argument.

4

1    In opposition, plaintiff claims that the delay caused plaintiff significant pain, weight loss,

2  and physical injuries caused by inadequate nutrition.  Plaintiff states he was unable to supplement

3  his diet with food from other sources because he is indigent, and that the non-meat items he was

4  able to eat were inadequate.  (ECF No. 17 at 2.)  Plaintiff argues that defendants' failure to

5  respond burdened his religion by causing him severe weight loss, and now claims, for the first

6  time, that defendants also denied him access to his spiritual advisors (the prison chaplain) because

7  defendants also failed to respond to his request for religious services.  Plaintiff now claims that

8  defendants delegated certain responsibilities to inmate clerks who decided who could attend

9  religious services.  Plaintiff states that although he signed up for church services weekly, he

10  wasn't allowed access the majority of the time.  (ECF No. 17 at 2.)  Finally, plaintiff contends

11  that defendants are not entitled to qualified immunity because it was not reasonable to fail to

12  approve a religious diet to a prisoner who was previously approved to receive a religious diet by

13  the sending institution.  (ECF No. 17 at 3.)

14    In reply, defendants reiterate that plaintiff failed to show he was deprived of alternative

15  means of exercising his religion, and argue that the delay in receiving a religious diet was

16  temporary and short.  (ECF No. 18 at 2.)  Defendants object to plaintiff's new claim concerning

17  the denial of access to religious services because such claim was not included in the complaint.

18  Defendants contend they are entitled to qualified immunity because plaintiff failed to show that

19  defendants intentionally delayed his religious diet, or that it was unreasonable for defendants to

20  believe that he would have eaten the non-meat items provided.

21    "The right to exercise religious practices and beliefs does not terminate at the prison door.

22  The free exercise right, however, is necessarily limited by the fact of incarceration, and may be

23  curtailed in order to achieve legitimate correctional goals or to maintain prison security."

24  McElyea v. Babbitt, 833 F.2d 196, 197 (9th Cir. 1987) (citing O'Lone v. Shabazz, 482 U.S. 342

25  (1987)).  Only beliefs which are both sincerely held and rooted in religious beliefs trigger the Free

26  Exercise Clause.  Shakur, 514 F.3d at 884-85 (citing Malik v. Brown, 16 F.3d 330, 333 (9th Cir.

27  1994)).  Under this standard, "when a prison regulation impinges on inmates' constitutional

28  ////

1    rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner

2    v. Safley, 482 U.S. 78, 89 (1987).

3    Turner set forth four factors for courts to balance in determining whether a regulation

4    reasonably relates to legitimate penological interests:  1) Whether there is a valid, rational

5    connection between the prison regulation and the legitimate governmental interest put forward to

6    justify it; 2) whether there are alternative means of exercising the right that remain open to prison

7    inmates; 3) whether accommodation of the right would impact guards and other inmates and the

8    allocation of prison resources general; and 4) whether or not there are easy, obvious alternatives

9    to the denial of the right.  Turner, 482 U.S. at 89-90; Shakur, 514 F.3d at 884.

10   Defendants primarily focus on one prong:  whether alternative means of practicing the

11   religion were available to plaintiff.  (ECF No. 15-1 at 4.)  However, as the Ninth Circuit made

12   clear in Shakur, application of Turner requires courts to "balance the four Turner factors," and

13   reversed the district court's grant of summary judgment on Shakur's free exercise claim.  Shakur,

14   514 F.3d at 885, 888.  As discussed below, the complaint alone does not permit evaluation of the

15   Turner factors.

16   Defendants contend that plaintiff could simply eat the non-meat items he was served.

17   (ECF No. 15-1 at 5.)  Defendants rely on Watkins v. Shabazz, 180 Fed. Appx. 773 (9th Cir. 2006)

18   (where a Muslim inmate could have obtained Halal meat from an outside source or could have

19   eaten meat substitutes, the prison's failure to provide meals with Halal meat did not substantially

20   burden his exercise of religion.).

21   "Inmates . . . have the right to be provided with food sufficient to sustain them in good

22   health that satisfies the dietary laws of their religion."  McElyea, 833 F.2d at 198.  Further, it is

23   well settled that failure to feed an inmate a diet that comports with his religious beliefs would

24   implicate the free exercise clause of the federal constitution.  Shakur, 514 F.3d at 885.  But see

25   Alexander v. Carrick, 31 F. Appx. 176, 179 (6th Cir. 2002) (holding that even if an inmate is

26   given food items that do not conform to his religious beliefs, this does not violate the free

27   exercise clause if the other food provided to him "is sufficient to sustain the prisoner in good

28   health").

6

1      Here, the complaint does not address the nutritional value of the non-meat items provided.

2  Indeed, plaintiff claims he lost 50 pounds due to inadequate nutrition (ECF No. 1 at 6), arguing

3  that this was a severe weight loss during this period, reducing him from 210 pounds to 160

4  pounds (ECF No. 17 at 2).  Such allegation raises an inference that the non-meat items failed to

5  provide plaintiff with adequate nutrition.  Also, plaintiff claims he is indigent, which is supported

6  by his application to proceed in forma pauperis; thus, defendants' argument that plaintiff could

7  supplement his diet by purchasing items at the canteen or elsewhere is unavailing.  In addition,

8  the court cannot determine, simply from reviewing plaintiff's complaint, whether food is served

9  in a manner that would enable plaintiff to select items that were not cooked with meat.  Thus, the

10 court cannot determine whether plaintiff was forced to choose between adequate nutrition and

11 adhering to his religious beliefs.

12      Moreover, unlike other prisoners,[2] plaintiff did not refuse to complete the form necessary

13 to obtain a religious diet.  Rather, plaintiff completed the form and obtained a religious diet card

14 from CCI, and presented the religious diet card to prison staff at HDSP.  When prison staff

15 informed plaintiff that he must obtain a card from the chaplain at HDSP, plaintiff allegedly

16 submitted multiple requests for an interview, despite prison regulations that state that prisoners

17 should be allowed to continue their religious diets even after transfer to another institution.  Cal.

18 Code. Regs. tit. 15, § 3054(c).  In such a situation, where the prisoner has a religious diet card

19 ostensibly supported by documents in his prison file, a more reasonable alternative might be to

20 allow the prisoner to continue receiving the religious diet until the chaplain at the new prison

21

22 [2] One prisoner initially refused to complete the form, arguing that such a requirement burdened
his religion.  Resnick v. Adams, 348 F.3d 763 (9th Cir. 2003).  The Ninth Circuit disagreed, and
23 in affirming the grant of summary judgment to defendants, held that requiring a prisoner to
complete a standard form to obtain kosher meals did not violate his right to free exercise of
24 religion.  Id.  In another case, prison staff honored the prisoner's religious diet card upon his
transfer to another prison, but when he was moved to administrative segregation, prison staff
25 questioned the validity of the card and stopped providing a religious diet.  McKenzie v. Ellis,
2012 WL 4050297 (S.D. Cal. Sept. 13, 2012).  McKenzie argued that his religious diet
26 information was missing from his file through no fault of his own, and should be rectified by
defendants without asking him to fill out the form again.  Id. at *4 n.2.  In granting the motion to
27 dismiss, the district court found that McKenzie held no protected liberty interest in not
completing such de minimis paperwork.  Id.
28

7

1    could interview the prisoner to determine whether the card should be discontinued, rather than the

2    opposite procedure.  In any event, the complaint contains no allegations suggesting any portion of

3    the delay was attributable to plaintiff.

4            Defendants argue that the delay was "temporary and short."  Indeed, some courts have

5    found that brief deprivations of religious diets did not substantially burden the prisoner's religious

6    practice.  McKenzie v. Ellis, 2012 WL 4050297, *5 (S.D. Cal. Sept. 13, 2012) ("having less to eat

7    during those four days didn't substantially burden McKenzie's religious practice."); Tapp v.

8    Proto, 404 Fed. Appx. 563 (3rd Cir. 2010) (less than two week delay in honoring request for

9    kosher meals did not impinge on inmate's free exercise rights); Davidson v. Murray, 2005 WL

10   1123756, *4 (W.D. N.Y. May 10, 2005) (court found that 10 day delay in inmate receiving

11   kosher diet was the result of "typical and acceptable institutional delay which does not implicate

12   the Free Exercise Clause," and granted summary judgment for defendants.); Holiday v. Giusto,

13   2004 WL 1792466, *5 (D. Or. Aug 10, 2004) (in granting summary judgment, court held that

14   eighteen-day delay in providing religious meals, caused by administrative delay, was not a

15   substantial burden).

16           But defendants cite no authority for their theory that a period over sixty days is "short" in

17   the context of providing a religious diet.  Here, plaintiff alleges that a delay of over 60 days

18   resulted in an alleged weight loss of fifty pounds.  Other than unanswered requests, the complaint

19   does not explain the specifics of the delay, so it is unclear whether there was a legitimate reason

20   for the entire delay or any portion of the delay.  In addition, plaintiff names two chaplains at

21   HDSP as defendants; arguably at least two chaplains were available to interview inmates and

22   issue religious diet cards.  Absent further factual development, the court cannot determine

23   whether a sixty day delay is "reasonable," or whether such delay was simply an "administrative"

24   delay.  However, taking plaintiff's allegations as true, the undersigned cannot find at this stage of

25   the litigation that such delay was short or reasonable as a matter of law.

26           Finally, defendants are correct that plaintiff may not include new allegations in his

27   opposition.  Plaintiff now alleges that he was also denied access to religious services.

28   ////

8

1  Specifically, plaintiff states that although he signed up for weekly church services, he wasn't

2  allowed access a majority of the time.  (ECF No. 17 at 2.)

3          To state a First Amendment, free-exercise-of-religion claim, a plaintiff must allege that a

4  defendant burdened the practice of plaintiff's religion by preventing him from engaging in a

5  sincerely-held religious belief and that the defendant did so without any justification reasonably

6  related to legitimate penological interests.  Shakur, 514 F.3d at 878.

7          Plaintiff's new allegation concerning religious services is too vague and conclusory to

8  determine whether he can state a cognizable free exercise claim based on the alleged deprivation

9  of access to religious services.  Plaintiff will be granted leave to amend to describe the

10  circumstances surrounding the denial of such access, including explaining whether he was able to

11  join communal services broadcast via television to his cell, or alleging facts suggesting how his

12  inability to attend the religious services substantially burdened the practice of his religion.

13          Accordingly, plaintiff is granted leave to amend in the event he can allege facts

14  demonstrating defendants have substantially burdened the exercise of his religion by denying him

15  access to religious services.

16          E.  Qualified Immunity

17          The defense of qualified immunity protects "government officials . . . from liability for

18  civil damages insofar as their conduct does not violate clearly established statutory or

19  constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457

20  U.S. 800, 818 (1982).  A court considering a claim of qualified immunity must determine:  (1)

21  whether the plaintiff has alleged the deprivation of an actual constitutional right, and (2) whether

22  such right was clearly established such that it would be clear to a reasonable officer that his

23  conduct was unlawful in the situation he confronted.  See Pearson v. Callahan, 555 U.S. 223

24  (2009).  The Court may exercise its discretion in deciding which prong to address first, in light of

25  the particular circumstances of each case.  Id.

26          The undersigned cannot find that defendants are entitled to qualified immunity because,

27  for purposes of the First Amendment, there is a clearly established right to a religious diet that

28  meets the inmate's religious dietary needs unless there is a legitimate penological reason to deny

9

1    it. See McElyea, 833 F.2d at 198 ("Inmates . . . have the right to be provided with food sufficient

2    to sustain them in good health that satisfies the dietary laws of their religion.")  Failure to provide

3    a religiously appropriate diet must be justified by legitimate penological interests, as evaluated

4    under the four-factor Turner test. Shakur, 514 F.3d at 884, quoting Turner, 482 U.S. at 78.  As set

5    forth above, the record before the court at this stage of the proceedings does not permit evaluation

6    of the Turner factors. Cf. Shakur, 514 F.3d at 887-88 (reversing summary judgment for

7    defendants and remanding for further fact-finding regarding Turner factors).

8         A dismissal on grounds of qualified immunity on a Rule 12(b)(6) motion is not

9    appropriate unless it can be determined "based on the complaint itself, that qualified immunity

10   applies." Groten v. California, 251 F.3d 844, 851 (9th Cir. 2001); Rupe v. Cate, 688 F. Supp.2d

11   1035, 1050 (E.D. Cal. 2010) (court denied defendants' claim of qualified immunity where it was

12   not clearly applicable and on face of complaint but stated the ground could be raised on

13   summary judgment).  Here, it cannot be determined based on the complaint that qualified

14   immunity applies.  The questions whether a constitutional right was violated and whether a

15   reasonable chaplain would have recognized that a more than 60 day delay in providing a religious

16   diet to plaintiff was unconstitutional turn on facts that remain to be developed.  Accordingly, the

17   motion to dismiss on qualified immunity grounds should be denied without prejudice to renewal

18   on summary judgment.

19        F.  Amended Complaint

20        If plaintiff chooses to file an amended complaint, he should re-allege his claim that

21   defendants deprived him of his religious diet in violation of the Free Exercise Clause.  Plaintiff

22   should not renew his claims under RLUIPA because, as stated above, plaintiff cannot state a

23   claim for damages under RLUIPA, and his transfer to a different prison precludes a claim for

24   injunctive relief.  Plaintiff must demonstrate how the conditions about which he complains

25   resulted in a deprivation of plaintiff's constitutional rights. Rizzo v. Goode, 423 U.S. 362, 371

26   (1976).  Also, the complaint must allege in specific terms how each named defendant is involved.

27   Id.  There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or

28   connection between a defendant's actions and the claimed deprivation.  Id.; May v. Enomoto, 633

10

1   F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Furthermore,

2   vague and conclusory allegations of official participation in civil rights violations are not

3   sufficient.  Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

4        In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to

5   make plaintiff's amended complaint complete.  Local Rule 220 requires that an amended

6   complaint be complete in itself without reference to any prior pleading.  This requirement exists

7   because, as a general rule, an amended complaint supersedes the original complaint.  See Loux v.

8   Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files an amended complaint, the original

9   pleading no longer serves any function in the case.  Therefore, in an amended complaint, as in an

10  original complaint, each claim and the involvement of each defendant must be sufficiently

11  alleged.

12  V.  Conclusion

13       For all of the above reasons, defendants' motion to dismiss should be granted in part;

14  plaintiff's claim under RLUIPA should be dismissed with prejudice.  In all other respects,

15  defendants' motion to dismiss should be denied.  Plaintiff should be granted leave to file an

16  amended complaint to include his access to religious services claim within thirty days from the

17  date of any order by the district court adopting the instant findings and recommendations.

18       Accordingly, IT IS HEREBY ORDERED that the Clerk of the Court is directed to

19  randomly assign a district judge to this case;

20       IT IS HEREBY RECOMMENDED that:

21       1.  Defendants' motion to dismiss (ECF No. 15) be granted, as follows:

22            a.  Plaintiff's claim under RLUIPA be dismissed with prejudice; and

23            b.  In all other respects, defendants' motion to dismiss be denied; and

24       2.  Plaintiff be granted thirty days from the date of any order adopting these findings and

25  recommendations in which to file an amended complaint.  Plaintiff's amended complaint shall

26  comply with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and

27  the Local Rules of Practice.  The amended complaint must also bear the docket number assigned

28  to this case and must be labeled "Amended Complaint."

1    These findings and recommendations are submitted to the United States District Judge

2    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

3    after being served with these findings and recommendations, any party may file written

4    objections with the court and serve a copy on all parties.  Such a document should be captioned

5    "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

6    objections shall be filed and served within fourteen days after service of the objections.  The

7    parties are advised that failure to file objections within the specified time may waive the right to

8    appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

9    Dated:  June 16, 2015

10

11   KENDALL J. NEWMAN
     UNITED STATES MAGISTRATE JUDGE

12

13

/onea1597.mtd
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28